STATE of North Dakota, Plaintiff
and Appellee,

v.

Sheila BARNES, Defendant
and Appellant.

Criminal No. 950323.

Supreme Court of North Dakota.

June 27, 1996.

David D. Hagler, Assistant Attorney General, Attorney General's Office, Bismarck, for plaintiff and appellee.

Michael R. Hoffman, Bismarck, for defendant and appellant.

NEUMANN, Justice.

Sheila Barnes appealed from a judgment of conviction for delivery of a controlled substance, a class B felony under Section 19–03.1–23(1)(b), N.D.C.C. We conclude Barnes' allegations of error by the district court are without merit, and we affirm.

The relevant facts in this case are not in dispute. Suspecting possible drug activity, Michael Nason, a special agent with the North Dakota Bureau of Criminal Investigation, and Steve Cleveland, an undercover drug enforcement officer with the Bismarck Police Department, met Barnes on the evening of September 22, 1994 at the Lone Steer, a motel, restaurant, and bar in Steele. Barnes was working there as a waitress and served the officers, who testified she appeared to fit the general description of a person they believed may have been engaging in criminal activity. Barnes agreed to join the officers in the bar after she finished work. The officers bought Barnes a few drinks and told her they would like to get some marijuana. She said she could get it for them and took $60 from the officers for that purpose. They agreed to return two days later and pick up the marijuana from Barnes.

Barnes testified she traveled to Bismarck where she purchased marijuana with the $60. She testified that when the officers returned she did not want to give the marijuana to them, but she had spent their money to get it and did not have $60 to return to them. Nevertheless, she told the officers their money would be at the front desk waiting for them in the morning. Cleveland responded that they had given Barnes $60 and would not leave without either the money or the marijuana. Barnes then went to her residence located above the Lone Steer and retrieved the marijuana. She gave it to the officers and was immediately arrested. Barnes was ultimately convicted by a jury of delivery of a controlled substance, and she appealed.

Barnes argues the trial court erroneously instructed the jury on voluntary intoxication. During the trial, Barnes testified she is a drug-addicted alcoholic and was intoxicated when she delivered the marijuana to the officers. Because of that testimony, the State requested the court instruct the jury on the effect of voluntary intoxication. Over Barnes' objection, the trial court gave the following instruction:

"The fact that the Defendant was voluntarily intoxicated at the time she committed the alleged offense does not relieve her of criminal responsibility for the crime."

Barnes contends the instruction "paints with too broad a brush." Section 19–03.1–23(1), N.D.C.C., makes it unlawful for any person to "willfully" deliver a controlled substance. Under Section 12.1–02–02(1)(e), N.D.C.C.,

willfully is defined as engaging in conduct "intentionally, knowingly, or recklessly." Barnes argues the jury should have been instructed they could find her intoxication negated the culpability requirement of willfully.

Section 12.1–04–02, N.D.C.C., sets forth the effect of intoxication relative to criminal charges:

"1. Intoxication is not a defense to a criminal charge. Intoxication does not, in itself, constitute mental disease or defect within the meaning of section 12.1–04–04. Evidence of intoxication is admissible whenever it is relevant to negate or to establish an element of the offense charged.

"2. A person is reckless with respect to an element of an offense even though his disregard thereof is not conscious, if his not being conscious thereof is due to self-induced intoxication."

Although this statute was rewritten when the new criminal code was adopted in 1973 and was amended in 1977, the basic principles of law regarding the effect of intoxication as it relates to criminal charges have not changed since the first intoxication statute was enacted in 1877. We summarized those principles in *State v. Tipler*, 316 N.W.2d 97, 101 (N.D. 1982):

"Although voluntary intoxication is not exculpatory in itself, where an offense requires a 'specific intent,' intoxication may be considered in determining whether or not such intent exists. As this court explained long ago, '[Evidence of intoxication is not] considered for the purpose of justifying or excusing the crime, but for the sole purpose of determining whether, in fact, the ... crime has been committed.'

\* \* \* \* \* \*

"[T]he changes in the intoxication statutes did not alter the substance of the law. Rather, the statutes express the same time-honored principles in different words. For instance, the old code said that '[n]o act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition.' Sec. 12–05–01, N.D.C.C. (repealed 1973). The 1973 statute, cast in positive terms, stated that '[i]ntoxication is a defense to the criminal charge only if it negates the culpability required as an element of the offense charged.' Sec. 12.1–04–02, N.D.C.C. The 1977 amendment recast the law in negative terms: 'Intoxication is not a defense to a criminal charge.' Sec. 12.1–04–02, N.D.C.C. These statements do no more than express, in varying ways, the rule that it is no excuse that the actor might not have committed the crime had he been sober." [1]

See also *State v. Cummins*, 347 N.W.2d 571 (N.D.1984) (voluntary intoxication is not a defense to a crime of general intent but evidence of intoxication is admissible whenever it is relevant to negate or to establish an element of the offense charged).

 Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Saul*, 434 N.W.2d 572 (N.D.1989). If a defendant desires a more comprehensive instruction on any phase of the case than what the trial court has indicated it will give, the defendant must request specific written instructions, and if the defendant fails to make such a request she cannot predicate error upon omissions in the charge given. *State v. Olson*, 356 N.W.2d 110 (N.D. 1984). If the defendant does not request an

---

1. Justice Dale Sandstrom, as an assistant attorney general, drafted the 1977 amendments to Section 12.1–04–02, N.D.C.C., [S.L.1977, Ch. 120, § 1]. He testified before the Senate Judiciary Committee:

"... except as provided in subsection 3, intoxication is not a defense to a criminal charge. Evidence of intoxication is admissible whenever it is available to negate.... For example, if a guy was so intoxicated he did not know what he was doing, then the crime did not occur at all.... [I]n a murder prosecution a person has to intentionally perform the act, if a person was very intoxicated and could not form the intent, his mind was so polluted he did not know what he was doing, he didn't have the proper state of mind to perform the crime. To show that the person did not have the necessary state of mind or did have the necessary state of mind, [he] could introduce evidence of intoxication."

instruction or object to the omission of an instruction, we will not reverse unless the failure to give the instruction constitutes obvious error. *State v. Janda,* 397 N.W.2d 59 (N.D.1986). Although Barnes objected to the court giving any intoxication instruction, she did not propose additional or more detailed instructions on this issue and cannot now predicate error upon the court's failure to more fully instruct. We, therefore, review the instruction only to determine if the court committed obvious error.

■ Barnes, through her own testimony, conceded she knowingly and intentionally took the money from the agents, purchased marijuana with it, and then, on the night of the delivery, knowingly went to her residence, where she had stashed the marijuana, retrieved it, and handed it over to the agents. During discussion with the court at the close of trial, Barnes' counsel conceded culpability was not an issue:

"... I don't think there's even a question as to what state of mind we have here. Obviously, we're talking about someone who's acting knowingly. It's not a question of anyone even belaboring the point. It's a question of an affirmative defense, notwithstanding the fact that it happened. So obviously, we're talking about either an intentional or knowing act."

Although Barnes testified she was intoxicated she, nevertheless, conceded she knowingly and intentionally delivered the contraband to the agents. Consequently, there was no relevant evidence in this case upon which a jury could find Barnes was so intoxicated as to negate the culpability element of the crime. A defendant is entitled to an instruction based on a legal defense only if there is evidence to support it. *State v. Thiel,* 411 N.W.2d 66 (N.D.1987). Barnes was not, therefore, entitled to an additional instruction on intoxication.

Barnes argues intoxication was also a part of her entrapment defense which was negatively affected by the court's failure to instruct that intoxication is admissible to negate an element of the crime. She asserts there was evidence for the jury to find the officers bought her intoxicating liquor, thereby committing entrapment which would relieve her from criminal responsibility for the crime. She asserts the instruction that intoxication is not a defense was therefore "too broad" and improper.

■ Barnes' argument is difficult to follow and was presented by Barnes' counsel without supporting authority. The argument fails to recognize that entrapment is an affirmative defense, not an element of the crime. Consequently, Barnes' entrapment defense could not have been impacted by the omission of an instruction that intoxication can be a factor to negate an element of the crime charged. The court fully instructed the jury on entrapment and allowed Barnes to present evidence relating to her entrapment defense, including evidence that the officers purchased alcohol for her and that she was intoxicated. We are unconvinced the intoxication instruction in any way interfered with or hampered Barnes' entrapment defense.

■ We review the trial court's jury instructions as a whole and consider whether they correctly and adequately apprised the jury of the law. *See State v. Azure,* 525 N.W.2d 654 (N.D.1994). Under the circumstances of this case, we conclude the court's intoxication instruction adequately apprised the jury of the law and neither misled nor misinformed the jury.

Barnes also asserts on appeal that the trial evidence demonstrates there was entrapment "as a matter of law," warranting reversal of her conviction.

■ The defense of entrapment is set forth under Section 12.1–05–11(2), N.D.C.C.:

"A law enforcement agent perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, the law enforcement agent induces or encourages and, as a direct result, causes another person to engage in conduct constituting such a crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

283

Entrapment is an affirmative defense that the accused must prove by a preponderance of the evidence and is ordinarily a question of fact for the jury. *State v. Rehling,* 426 N.W.2d 6 (N.D.1988). If, however, no dispute exists over the facts or the inferences to be drawn from the facts, Barnes argues the court may determine the existence of entrapment as a matter of law, *citing State v. Kummer,* 481 N.W.2d 437 (N.D.1992). In *Kummer,* law enforcement officers, acting contrary to department policy and without authorization, removed a dangerous illegal drug from police evidentiary custody and provided it to an informant who then sold it to the defendant. We concluded the police had used unlawful means to induce the crime. Barnes claims our decision in *Kummer* requires us to conclude the officers in this case committed entrapment as a matter of law because of their "unlawful" conduct.

■ Barnes testified the officers told her they would get her stoned if she went to Bismarck and got marijuana for them. She claims this is outrageous and unlawful conduct which constitutes entrapment as a matter of law. We disagree. The officers did not actually allow Barnes to smoke any of the marijuana she sold to them. Telling a suspect during conversations for making the "deal" that she could use some of the drugs after delivering them does not rise to the level of the unlawful conduct in *Kummer,* where the officers actually improperly obtained the contraband and supplied it for the sale. Under these circumstances, we conclude the question of entrapment was a question of fact for the jury to decide.

■ Barnes asserts the trial court should have instructed the jury on the defense of duress. When the officers came to pick up the marijuana from Barnes she claims she felt threatened when Officer Cleveland walked toward her and stated they had given her $60 and were not leaving without either the money or the drugs. However, Barnes did not request an instruction on duress and none was given. When a defendant fails to request an instruction, the omission to instruct is not reversible unless we deem the failure to give the instruction obvious error which affects substantial rights

of the defendant. Rule 52, N.D.R.Crim.P.; *State v. Janda,* 397 N.W.2d 59 (N.D.1986). Officer Cleveland testified he did not recall making any threatening statement to Barnes, and her brief testimony on this issue did not raise an obvious defense of duress. We conclude the court's failure to instruct on duress did not constitute obvious error.

■ Gerald Kemmet, chief agent for the Narcotics Division of the Bureau of Criminal Investigation, testified the division had prior information about drug activity occurring at the Lone Steer. Agent Nason testified Barnes told them during their initial conversations with her that "she didn't know if we knew who she was, but she had been involved in a ... series of activities." Barnes asserts this testimony by Kemmet and Nason was inadmissible because it relates to Barnes' predisposition to commit the crime and is irrelevant under the objective test of entrapment. There was no objection at trial to the admission of this testimony, but Barnes asserts the court committed obvious error in allowing it.

Prior to 1993, our entrapment statute, Section 12.1-05-11(2), N.D.C.C., focused entirely on the conduct of law enforcement officials, and the accused's predisposition to commit the crime was irrelevant. *See State v. Brooks,* 520 N.W.2d 796 (N.D.1994). However, the statute, as amended in 1993, also places some relevance on the accused's subjective predisposition to commit the crime. We stated in *State v. Murchison,* 541 N.W.2d 435, 440 (N.D.1995):

"In amending NDCC 12.1-05-11, the legislature replaced the wording that defined entrapment conduct as that 'likely to cause normally law-abiding persons to commit the offense,' with wording that defined entrapment conduct as that 'creat[ing] a substantial risk that such crime will be committed by a person other than one who is ready to commit it.' This new wording appears to make more relevant an accused's subjective predisposition to commit the crime, although the new wording does not shift the focus completely away from the law-enforcement conduct.

\* \* \* \* \* \*

"[Footnote 2 text] The legislative history of the 1993 amendment confirms an intention to make the accused's criminal predisposition a relevant factor."

We conclude the testimony was relevant and admissible, and the district court did not commit obvious error in admitting it.

The judgment of conviction is affirmed.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.